# Exhibit 1

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | | **CASE NO.** |
|---|---|---|
| 22nd   JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS** | 20-000643-NZ<br>JUDGE CAROL KUHNKE |

Court address    Court telephone no.
101 EAST HURON STREET   ANN ARBOR, MICHIGAN 48104-1446    (734) 222-3001

| Plaintiff's name(s), address(es), and telephone no(s).<br>MARK W. DOBRONSKI    TEL: (734) 641-2300<br>PO BOX 85547<br>WESTLAND, MI 48185-0547 | v | Defendant's name(s), address(es), and telephone no(s).<br>AMERICAN INSURANCE BROKERS LLC;<br>CARLOS AYBAN BASTARDO;<br>UNITED FINAL EXPENSE SERVICES, INC.; and,<br>DOUGLAS CHARLES MASSI |
|---|---|---|

| Plaintiff's attorney, bar no., address, and telephone no.<br>PRO SE | See Page 2 for Defendants' addresses and telephone nos. |
|---|---|

Date: 7/10/202_ Time: _____

Initials: _____ PS# _____

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer   pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date*<br>10-07-2020 | Court clerk<br>/s/ Kim Plumb, 7/8/2020 |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**     MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

FILED IN Washtenaw County Trial Court; 7/8/2020 11:04 AM

## STATE OF MICHIGAN
## IN THE 22nd JUDICIAL CIRCUIT COURT

**MARK W. DOBRONSKI,**
an individual,

Case No.

Plaintiff,

v.

**AMERICAN INSURANCE BROKERS LLC,**
*et al.*

Defendants.

## SUMMONS
### (Page 2)

Defendants' Names, Addresses and Telephone Numbers

AMERICAN INSURANCE BROKERS LLC
316 N CENTER ST
PLYMOUTH, IN 46563-1726

TEL: (574) 936-4152

CAROS AYBAN BASTARDO
11191 SHADYLANE DR
PLYMOUTH, IN 46563-8623

TEL: (574) 936-4152

UNITED FINAL EXPENSE SERVICES, INC.
301 SW 7TH ST
HALLANDALE BEACH, FL 33009-7011

TEL: (888) 501-1375

DOUGLAS CHARLES MASSI
4721 FOUR LAKES CIR
VERO BEACH, FL 32968-4802

TEL: (888) 501-1375

**STATE OF MICHIGAN**
**IN THE 22nd JUDICIAL CIRCUIT COURT**

**MARK W. DOBRONSKI,**
an individual,

Case No. 20-000643-NZ

JUDGE CAROL KUHNKE

Plaintiff,

v.

**AMERICAN INSURANCE BROKERS LLC,**
an Indiana limited liability company;

**CARLOS AYBAN BASTARDO,**
an individual;

**UNITED FINAL EXPENSE SERVICES, INC.,**
a Florida corporation; and,

**DOUGLAS CHARLES MASSI,**
an individual;

Defendants.

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: MarkDobronski@yahoo.com
Plaintiff *In Propria Persona*

## COMPLAINT

Plaintiff, Mark W. Dobronski, appearing *in propria persona,* and for his Complaint says:

Parties, Jurisdiction, and Venue

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47

U.S.C. § 227, *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111,

*et seq.*, and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L.

FILED IN Washtenaw County Trial Court; 7/8/2020 11:04 AM

§ 484.101, *et seq.*

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, the Defendant AMERICAN INSURANCE BROKERS LLC ("AIB") is a limited liability company organized and existing under the laws of the State of Indiana, and has a principal office located at 316 North Center Street, Plymouth, Indiana 46563.

4. Upon information and belief, the Defendant CARLOS AYBAN BASTARDO ("Bastardo") is an individual, is of the age of majority, is mentally competent, is not in the military service, resides at 11191 Shadylane Drive, Plymouth, Indiana 46563-8623, purports himself to be the owner and president of co-defendant AIB, and orchestrated, directed, and participated in the tortious and/or illegal conduct complained of herein.

5. Upon information and belief, the Defendant UNITED FINAL EXPENSE SERVICES, INC. ("UFES") is a corporation organized and existing under the laws of the State of Florida, and has a principal office located at 301 Southwest 7th Street, Hallandale Beach, Florida 33009.

6. Upon information and belief, the Defendant DOUGLAS CHARLES MASSI ("Massi") is an individual, is of the age of majority, is mentally competent, is not in the military service, resides at 4721 Four Lakes Circle, Vero Beach, Florida 32968-4802, purports himself to be the owner and president of co-defendant UFWS, and orchestrated, directed, and participated in the tortious and/or illegal conduct complained of herein.

7. This Court has jurisdiction over the subject matter of this complaint and venue is proper in this Court, pursuant to 47 U.S.C. § 227(c)(5) and M.C.L. § 600.1629, as the tortious and illegal conduct complained of herein occurred in Washtenaw County, Michigan.

## General Allegations

8. In response to widespread public outrage over telemarketers, the United States Congress acted to prevent entities, like Defendants, from invading American citizen's privacy and to prevent abusive "robo-calls."

9. According to the Federal Communications Commission ("FCC"), "[u]nwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

10. Congress explicitly found that robo-calling is an invasion of privacy: "Evidence compiled by Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator, to be a nuisance and an invasion of privacy." Section 2 of Pub L. 102-243.

11. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459 at note 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

12. According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during the calendar month of February 2020 alone there were 4.8 billion robocalls initiated across the United States -- that works out to 166.3 million robocalls each day; 6.9 million robocalls each hour; 1,900 robocalls per second, or 14.7 robocalls per person. [Source:

www.robocallindex.com].

13. Congress found that telemarketing fraud has become a problem of such magnitude that the resources of the Government alone are not sufficient to ensure adequate consumer protection from such fraud; consumers and others are estimated to lose in excess of $40 billion a year in telemarketing fraud; and consumers are victimized by other forms of telemarketing deception and abuse.

14. In enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

15. The TCPA, at 47 U.S.C. 227(b)(1), promulgates in relevant part:

> "Prohibitions.  It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— ...
>
> (A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — ...
>
> (iii) **to any telephone number assigned to a** paging service, **cellular telephone service,** specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States...." [Emphasis added.]

16. Pursuant to authority delegated to it under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

17. The TCPA regulations, at 47 C.F.R. § 64.1200(a), promulgate in relevant part:

> "(a)  No person or entity may: ...
>
> (1) Except as provided in paragraph (a)(2) of this section, **initiate any telephone call** (other than a call made for emergency purposes or is

- 4 -

made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...

(iii) **To any telephone number assigned to a** paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...." [Emphasis added.]

18. The TCPA regulations, at 47 C.F.R. § 64.1200(d)(4), promulgate:

"Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. "

19. The TCPA regulations, at 47 C.F.R. § 64.1601(e), promulgate:

"Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.

(1) For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information...." [Emphasis added.]

20. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

- 5 -

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation,** whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

21. Pursuant to authority delegated to it under the TCPA at 47 U.S.C. § 227(c), the FCC has adopted regulations regarding the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations.

22. The "do not call" regulations, at 47 C.F.R. § 64.1200(c)(2), promulgate:

"(c) No person or entity shall initiate any telephone solicitation to: ...

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator...."

23. The "do not call" proscriptions also are applicable to cellular or wireless telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

"The rules set forth in paragraph (c) and (d) in this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers...."

24. The FCC has held that telephone subscribers who have listed their wireless telephone

- 6 -

number on the national do-not-call list are deemed to be "residential subscribers". See *In the Matter*

*of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC

Rcd. 14014 at para. 36 (2003).

25. The "do not call" provisions of the TCPA, at 47 U.S.C. § 227(c)(5), provide for a private

right of action, as follows:

> "(5) Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or
>
> (C) both such actions.
>
> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

26. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

> ". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

27. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

> "(1) At the beginning of a telephone solicitation, a person making a

telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made. . . .

28. The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

" (1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following: . . .

(f) Fail to comply with the requirements of section 1a or 1b.

(2) . . . [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

29. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

"(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do [] the following: . . .

(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber. . .

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees. . .

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

30. By listing a telephone number on the National Do Not Call Registry, the person so listing

their telephone number has given constructive notice to the world, including Defendants, that the

- 8 -

listing party does not wish to receive telephone solicitations at their telephone number so listed.

31. At all times relevant hereto, Plaintiff's cellular telephone number (ending in 9671) was listed on the National Do Not Call Registry maintained by the U.S. Federal Trade Commission pursuant to 16 C.F.R. Part 310.

32. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

33. Plaintiff is the subscriber and/or a customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. *See Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3 2015).

34. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized telephone contact from the Defendants.

35. At no time relevant hereto has Plaintiff or any other authorized person provided prior express consent or prior express written consent to Defendants to initiate telemarketing calls to Plaintiff or Plaintiff's telephone number.

36. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or

user as well as that of the person.

37. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

38. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

39. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

40. Plaintiff's home, office, and wireless telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some of the calls received by Plaintiff are blatant scams, including, *inter alia,* calls purportedly from the Internal Revenue Service advising that arrest warrants have been issued against Plaintiff; calls advising that Plaintiff has won a "free" Caribbean resort vacation; and, calls advising that Plaintiff's credit card interest rate is being lowered to zero percent.

41. For each and every call placed without consent by Defendants or Defendants' agents to Plaintiff's telephone number, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

42. For each and every call placed without consent by Defendants or Defendants' agents to Plaintiff's telephone, Plaintiff suffered the injury of the occupation of Plaintiff's telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendants' calls.

43. For each and every call placed without consent by Defendants or Defendants' agents to Plaintiff's telephone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to seal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

44. Each and every call placed without consent by Defendants or Defendants' agents to Plaintiff's telephone resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone and his telephone services.

45. As a result of the telephone calls described herein, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

46. The conduct of Defendants or Defendants' agents complained of herein caused injury and damage to Plaintiff, including, *inter alia,* the annoyance and interruption of Plaintiff's personal and business activities to respond to Defendants' or Defendants' agents' telephone calls; the tieing up of Plaintiff's telephone lines, thereby blocking legitimate callers from being able to get through

- 11 -

and engage in essential communications with Plaintiff; and, the waste of Plaintiff's resources to respond to Defendants' or Defendants' agents' telephone calls.

47. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

48. Defendants' or Defendants' agents' conduct alleged herein as being willful or knowing is clearly evidenced by, *inter alia*, the repeated calls.

49. Defendants' or Defendants' agents conduct alleged herein as being willful or knowing is clearly evidenced by, *inter alia*, the "spoofing" (i.e., falsification) of the caller identification information of the calls, which was a deliberate and overt fraudulent act.

## Allegations Specific to this Complaint

50. Defendants or Defendants' agents are engaged in telemarketing activities utilizing automatic telephone dialing systems to reach consumers en masse in order to engage in telephone solicitations promoting final expense death benefit plans.

### Call # 1

51. On April 21, 2020, at approximately 3:48 P.M., Defendants or Defendants' agents initiated a telephone call to Plaintiff's cellular telephone.

52. The caller identification number displayed for the incoming call was 734-330-5632.

53. Upon answering the telephone, Plaintiff observed several seconds of silence, then a boink sound, followed by a live telemarketer coming onto the line. This is characteristic of an automatic telephone dialing system being utilized.

54. The live telemarketer identified himself as "Bill" with "Senior Benefits." "Bill" then

- 12 -

asked Plaintiff if he was interested in information on final expense benefits insurance. "Bill" proceeded to ask Plaintiff's name, age, height, weight, and address.

55. To better identify the caller, Plaintiff provided controlled identifying information to the telemarkter; an investigative technique known as a "canary trap" or "barium meal test."

56. The telemarketer then attempted to transfer Plaintiff to a licensed agent. During the transfer process, the call became disconnected or terminated.

57. Immediately after the call disconnected, Plaintiff dialed telephone number 734-330-5632 and received a recording stating: "The number you have dialed is temporarily not in service."

## Call # 2

58. On April 21, 2020, at approximately 3:55 P.M., Defendants or Defendants' agents initiated a telephone call to Plaintiff's cellular telephone.

59. The caller identification number displayed for the incoming call was 734-330-5680.

60. Upon answering the telephone, Plaintiff observed several seconds of silence, then a boink sound, followed by a live telemarketer coming onto the line. This is characteristic of an automatic telephone dialing system being utilized.

61. The live telemarketer identified himself as "Joe" with "Senior Benefits," and shortly thereafter identified himself as "Paul". "Joe" or "Paul" then asked Plaintiff if he was interested in information on final expense benefits insurance.

62. The telemarketer suddenly hung up or terminated the call.

63. Immediately after the call disconnected, Plaintiff dialed telephone number 734-330-5680 and received a fast busy signal or reorder tone.

## Call # 3

64. On April 21, 2020, at approximately 4:39 P.M., Defendants or Defendants' agents

- 13 -

initiated a telephone call to Plaintiff's cellular telephone.

65. The caller identification number displayed for the incoming call was 734-330-1316.

66. Upon answering the telephone, Plaintiff observed several seconds of silence, then a boink sound, followed by a live telemarketer coming onto the line. This is characteristic of an automatic telephone dialing system being utilized.

67. The live telemarketer identified himself as "Kevin" with "American Senior Benefit." "Kevin" then stated that he had called earlier, but that his agent was busy at the time, but he was now ready to put the call through.

68. "Kevin" the confirmed that same controlled identifying information which Plaintiff had provided during Call #1, *supra.*

69. Plaintiff also noted that "Kevin" in Call # 3 was the same voice as "Bill" in Call # 1, *supra.*

70. The telemarketer then suddenly stated "let me call you back in one minute" and terminated the call.

71. Immediately after the call disconnected, Plaintiff dialed telephone number 734-330-1316 which call went to a voice mail box. Further investigation by Plaintiff has disclosed that the true subscriber to telephone number 734-330-1316 is Jacqueline Ann Snell of Ypsilanti, Michigan.

### Call # 4

72. On April 21, 2020, at approximately 4:40 P.M., Defendants or Defendants' agents initiated a telephone call to Plaintiff's cellular telephone.

73. The caller identification number displayed for the incoming call was 734-330-5041.

74. Upon answering the telephone, Plaintiff observed several seconds of silence, then a boink sound, followed by a live telemarketer coming onto the line. This is characteristic of an

- 14 -

automatic telephone dialing system being utilized.

75. The live telemarketer identified himself as "Kevin" with "Senior Benefits." "Kevin" stated that they were having problems with their system, but was now transferring the call to a licensed agent. "Kevin" then verified the controlled identifying information which Plaintiff had provided during Call # 1, *supra*. "Kevin" then transferred the call to the "verification department."

76. Another telemarketer then came on the line and identified himself as "Mark" with the "verification department." "Mark" then, once again, verified the controlled identifying information which Plaintiff has provided during Call #1, *supra*, and which Plaintiff had verified only a minute earlier with "Kevin." "Mark" then transferred the call to another telemarketer.

77. A third telemarketer then came on the line and identified himself as "Carlos." "Mark" then passed the controlled identifying information to "Carlos." Plaintiff then engaged in a discussion with "Carlos." Eventually, during the telephone conversation, the telemarketer identified himself as being defendant Bastardo and that he was the owner of defendant AIB.

78. When Plaintiff pushed defendant Bastardo for more information as to why Plaintiff had been receiving the unsolicited robocalls, defendant Bastardo disclosed to Plaintiff that the telemarketer was defendant UFES.

79. Upon information and belief, the fictitious names "Senior Benefits" and "American Senior Benefits" are not registered as an assumed or fictional business name with any governmental agency, and are used by Defendants in the furtherance of their fraudulent and illegal telemarketing activities.

80. Upon information and belief, the live agent telemarketers are employees, contractors, or agents of Defendants.

81. Immediately after the call disconnected, Plaintiff dialed telephone number 734-330-5041

which call went to a voice mail box. Further investigation by Plaintiff has disclosed that the true subscriber to telephone number 734-330-5041 is David Charles Glaser of Manchester, Michigan.

## COUNT I
## VIOLATION OF THE TCPA - 47 C.F.R. § 64.1200(a)(1)(iii)

82. Plaintiff incorporates the allegations of paragraphs 1 through 81, *supra.*

83. Each of the calls alleged in Call # 1, Call # 2, Call # 3, and Call # 4, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(a)(1)(iii), as Defendants or Defendants' agent initiated a telephone call to a cellular telephone line using an automatic telephone dialing system without the prior express written consent of the called party and there was no emergency purpose.

84. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT II
## VIOLATION OF THE TCPA - 47 C.F.R. § 64.1200(d)(4)

85. Plaintiff incorporates the allegations of paragraphs 1 through 84, *supra.*

86. Each of the calls alleged in Call # 1, Call # 2, Call # 3, and Call # 4, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(d)(4), as the Defendants did not provide the Plaintiff with the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

87. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT III
## VIOLATION OF THE TCPA - 47 C.F.R. § 64.1601(e)(1)

88. Plaintiff incorporates the allegations of paragraphs 1 through 87, *supra.*

89. Each of the calls alleged in Call #1, Call # 2, Call # 3, and Call # 4, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1601(e)(1), as the caller identification

- 16 -

number so provided was not a telephone number which would permit any individual to make a do-not-call request during regular business hours.

90. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT IV
## VIOLATION OF THE TCPA - 47 C.F.R. § 64.1200(c)(2)

91. Plaintiff incorporates the allegations of paragraphs 1 through 90, *supra.*

92. Each of the calls alleged in Call # 1, Call # 2, Call # 3, and Call # 4, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(c)(2), as the Defendants or Defendants' agents initiated a telephone solicitation to a telephone subscriber who has registered his telephone number on the national do-not-call registry or persons who do not wish to receive telephone solicitations and the caller had not obtained Plaintiff's prior express written consent.

93. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT V
## VIOLATION OF THE MHSSA - M.C.L. § 445.111a

94. Plaintiff incorporates the allegations of paragraphs 1 through 93, supra.

95. Each of the calls alleged in Call # 1, Call # 2, Call # 3, and Call # 4, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list.

## COUNT VI
## VIOLATION OF THE MTCCCA - M.C.L. § 484.125

96. Plaintiff incorporates the allegations of paragraphs 1 through 95, *supra.*

97. Each of the calls alleged in Call # 1, Call # 2, Call # 3, and Call # 4, *supra*, were in violation of the MTCCCA, specifically M.C.L. § 484.125(2)(b), as Defendant or Defendant's agent

- 17 -

delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.      1. As to Count I: Damages in the amount of $500.00 for the each of the 4 TCPA violations alleged, for damages in the amount of $2,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $6,000.00.

2. As to Count II: Damages in the amount of $500.00 for the each of the 4 TCPA violations alleged, for damages in the amount of $2,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $6,000.00.

3. As to Count III: Damages in the amount of $500.00 for the each of the 4 TCPA violations alleged, for damages in the amount of $2,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $6,000.00.

4. As to Count IV: Damages in the amount of $500.00 for the each of the 4 TCPA violations alleged, for damages in the amount of $2,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $6,000.00.

5. As to Count V: Damages in the amount of $250.00 for each of the 4 MHSSA violations alleged, for total damages of $1,000.00.

6. As to Count VI: Damages in the amount of $1,000.00 for each of the 4 MTCCCA violations alleged, for total damages of $4,000.00.

The cumulative total amount of damages claimed in this action is $29,000.00, and in the

- 18 -

event of default judgment is the sum certain that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. Interest accruing from the date of filing until paid at the statutory rate; and,

D. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: July 7, 2020

Mark W. Dobronski

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

- 19 -

## **VERIFICATION**

State of Michigan  )
                 ) *ss;*
County of Wayne  )

       MARK W. DOBRONSKI, being first duly sworn, says:

       1. I am the Plaintiff in the foregoing matter, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

       2. I have read the Complaint in the foregoing matter, and I know the contents thereof. The matters stated in the Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

       3. If sworn as a witness, affiant can testify competently to the facts as set forth in the Complaint.

       Further, affiant sayeth naught.

Mark W. Dobronski

Subscribed and sworn to before me
this __7th__ day of July, 2020.

Sandra J. Clarke, Notary Public
State of Michigan, Wayne County
Acting in Wayne County
My Commission Expires November 23, 2023

- 20 -